IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MICHAEL CHANNING POWELL
and LORI POWELL                                                                               PLAINTIFFS

VERSUS                                                         CIVIL ACTION NO.: 1:17CV89HSO-JCG

SIBRA RIVIERA, S.A. DE C.V.,
PALACE PREMIER, S.A. DE C.V.,
HARD ROCK CAFÉ INTERNATIONAL (USA), INC., and
HARD ROCK CAFÉ FRANCHISE GROUP, LLC                                       DEFENDANTS

**MEMORANDUM OF HARD ROCK DEFENDANTS IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND AMENDED COMPLAINT**

COMES NOW, Hard Rock Café International (USA), Inc. and Hard Rock Café Franchise Group, LLC by and through their attorneys respectfully submit this Memorandum in Support of their Motion to Dismiss Plaintiffs' Complaint and Amended Complaint.

Defendants seek dismissal pursuant to Fed R. Civ. P. 12(b)(2), on the grounds that this Court lacks personal jurisdiction over both Hard Rock Café Defendants named in this lawsuit.

In the alternative, Defendants seek dismissal under Fed R. Civ. P. 12(b)(6) on the grounds that neither Hard Rock Café Defendant owned, operated, controlled or maintained the hotel resort where Plaintiff's alleged incident occurred.  Both Hard Rock Café Defendants are separate legal entities and have no connection to the hotel resort in Quintana Roo, (Cancun) Mexico.

Each of these grounds independently supports dismissal.

**I.       STATEMENT OF FACTS**

Plaintiff has filed suit in the United States District Court for the Southern District of Mississippi, Southern Division, pertaining to an alleged slip and fall incident which occurred on

or about October 1, 2016 in Quintana Roo, Mexico.  *See* First Amended Compl. at ¶¶ 23-24.  Plaintiff has correctly pointed out that Defendant Hard Rock Café International (USA), Inc. is a duly licensed corporation incorporated in the State of Florida with its principal place of business in Orlando, Florida.  Defendant Hard Rock Café Franchise Group, LLC is a duly licensed corporation incorporated in the State of Florida with its principal place of business in Orlando, Florida.  The other defendants, namely Sibra Riviera, S.A. de C.V. and Palace Premier, S.A. de C.V. appear to be corporations organized under the laws of Mexico which are domiciled in and having their principal places of business in Quintana Roo, Mexico.

Plaintiff, a Mississippi resident, claims that the Defendant Hard Rock Café entities allegedly have minimum contacts with the State of Mississippi either through marketing and/or solicitations of vacation/timeshare rentals supposedly made to Plaintiffs.

Plaintiff further claims that on or about October 1, 2016, Plaintiff slipped and fell on a ramp without handrails at the Mexican resort when walking from a "sales meeting advertising membership upgrades" to their vacation/timeshare ownership.  As a result of this allegedly dangerous ramp and/or walkway, Plaintiff claims to have suffered injuries including an exacerbation of a prior back injury, two broken ribs and various contusions and abrasions.  *See* First Amended Compl. ¶27.  Plaintiffs' lawsuit also alleges negligence and gross negligence as well as a loss of consortium claim by Plaintiffs.

## II.      ARGUMENT

This is a Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) or, in the alternative, Fed. R. Civ. P. 12(b)(6).

A plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence.  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  In considering a motion to dismiss

for lack of personal jurisdiction, a district court may consider affidavits, interrogatories, depositions, oral testimony or any recognized methods of discovery. *Id.* The court must accept the plaintiff's uncontroverted allegations and resolve all conflicts between the facts contained in affidavits and other documents in the plaintiff's favor. *Id.* "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for specific jurisdiction has been presented." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "accepts all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). Factual allegations must be enough to raise a right to relief above the speculative level based on the assumption that the allegations in the complaint are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level'" *Emesowum v. Houston Police Dep't.*, 561 F. App'x 372, 374 (5th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555 (2007)).

"The due process clause of the Fourteenth Amendment constrains a state's authority to bind a non-resident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559 (1980)) "Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure confers personal jurisdiction over any defendant who would be subject to personal jurisdiction under the long arm statute of the state in which the district court sits." *Pitts v. Ford Motor Co.*, 127 F.Supp.3d 676, 681 (S.D. Miss. 2015). However, even if jurisdiction under Mississippi's Long-Arm Statute is established, the

inquiry does not end there. The next question is whether the defendant is amenable to suit in Mississippi consistent with the due process clause of the United States Constitution, and federal law governs this determination. *Horne v. Mobile Area Water & Sewer Sys.*, 897 So.2d 972, 976 (Miss. 2004).

"Although a non-resident's physical presence within the territorial jurisdiction of the court is not required the non-resident generally must have 'certain minimal contacts…such that the maintenance of the suit does not offend tradition notions of fair play and substantial justice.'" *Id*. (quoting *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945)). The Supreme Court has recognized two types of contacts a non-resident may have with the forum such that it would be amenable to personal jurisdiction in that form. Based on the contact, "[p]ersonal jurisdiction may be general or specific." *Pitts,* 127 F.Supp.3d at 682. "General jurisdiction exists where the defendant has maintained 'continuous and systematic' contacts with the forum state, and the court may exercise jurisdiction over any action brought against the defendant in that state." *Id*. (quoting *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 415-16, 104 S. Ct. 868, 80 L.Ed.2d 404 (1984)). In contrast, "[s]pecific jurisdiction is claimed-specific and the court may only exercise its jurisdiction 'in a suit arising out of or related to the defendant's contact with the forum.'" *Id*. (quoting *Helicopteros* 466 U.S. at 414.

### III.     THIS COURT LACKS GENERAL JURISDICTION OVER THE HARD ROCK CAFÉ DEFENDANTS

The Supreme Court has explained that "a court may assert [general] jurisdiction over a foreign corporation 'to hear any and all claims against it' only when the corporation affiliations with the State in which suit is brought are so constant and persuasive 'as to render it essentially at home in the forum state.'" *Daimler A.G. v. Bauman*, 134 S. Ct. 746, 751, 187 L.Ed.2d 624 (2014)

(quoting *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L.Ed.2d 796 (2011)). This court further explained that a "corporation is 'at home' in the state where it is incorporated and in the state where it maintains it principal place of business." *Pitts,* 127 F.Supp.3d at 683 (citing *Daimler* 134 S. Ct. at 760). In essence, the Supreme Court eliminated the previously used "continuous and systematic" test, thereby stating that general jurisdiction can be obtained against a defendant only where it is "at home." The *Daimler* ruling ends more than 60 years of conventional wisdom, thereby reducing the number of possible venues for plaintiff to assert general jurisdiction over a national company from all 50 states to just two: its state of incorporation and the state of its principal place of business.

The *Daimler* case involved actions allegedly taken by Daimler's Argentinian subsidiary during Argentina's "dirty war" in the 1970s. 134 S. Ct. at 751. Defendant Daimler was a German public stock company headquartered in Stuttgart, Germany. Plaintiffs, 22 Argentinian nationals, alleged that the subsidiary collaborated with Argentinian state security forces to kidnap, detain, torture and kill a number of its employees. *Id.* The Argentinian plaintiffs filed suit in California instead of suing in Argentina or Germany. Plaintiffs claim that the California court had general jurisdiction based on the unrelated activities of another Daimler subsidiary not named as a defendant in the lawsuit that being Mercedes-Benz USA. *Id*. at 752. Mercedes-Benz USA is a Delaware corporation with it principal place of business in New Jersey. That entity distributed motor vehicles throughout the US, including California. *Id*. The United States Supreme Court rejected the Plaintiffs' argument that the California had general jurisdiction over Mercedes-Benz USA because it received "substantial revenue," had local sales representatives and California dealerships, holding that Daimler's contacts with California through Mercedes-Benz USA were not significant enough to render it 'at home" in California. *Id*. at 762.

5

In the first post-*Daimler* opinion on general jurisdiction from a US Circuit Court of Appeal, *Monkton Insurance Services v. Ritter*, 768 F.3d 429 (5th Cir. 2014), the Fifth Circuit expressly stated that Daimler's role makes it "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Id*. at 432. The plaintiff in *Monkton*, an insurance manager, was a Texas resident who at all relevant times remained in Texas. The defendant was a bank organized and regulated under the laws of the Caymen Islands and located on Grand Caymen Island. Plaintiff based its "continuous and systematic" argument on the banks website, phone conversations with the defendant in Texas (initiated by the defendant, not the bank), and in its wire transfers to Texas banks. *Id*. at 432. However, in applying *Daimler,* the Fifth Circuit rejected the Plaintiff's argument that the Grand Caymen bank's contacts were continuous and systematic enough to establish general jurisdiction in Texas. *Id*. at 432-34. The Court then affirmed the district court's dismissal of the Grand Caymen bank for lack of personal jurisdiction.

In the *Pitts* case from 2015, the Southern District had to consider whether Ford Motor Company was susceptible to general jurisdiction in the State of Mississippi. 127 F.Supp.3d at 683. In support of their assertion that general jurisdiction existed as to Ford, Plaintiffs contended that "Ford is qualified and registered to do business in the State of Mississippi, licensed to sell or distribute new automobiles in Mississippi, contracts with Mississippi based dealers, provides operational guidelines to Mississippi dealers, has purchased a Mississippi dealership, advertises in Mississippi, and has an agent for service of process in Mississippi." *Id.* However, this Court held that "even assuming the truth of plaintiffs' allegations, the contacts plaintiffs identify are insufficient to establish that Ford is susceptible to general jurisdiction in the State of Mississippi." *Id.* In so holding, this Court noted, "[t]he record it is clear that Ford is neither

incorporated nor has it principal place of business in Mississippi." Instead, the aforementioned contacts identified by plaintiffs "demonstrate that Ford is at most 'doing business' in Mississippi and those contacts do not reveal activities that are so 'continuous or systematic' as to render Ford 'at home' in Mississippi." *Id.* (citing *Daimler*, 134 S. Ct. at 760-61).

The U.S. Supreme Court has recently reaffirmed its prior holdings in *Daimler* and *Goodyear* in that general jurisdiction is limited to the principal place of business and the state of incorporation for large multistate corporations and that specific jurisdiction is limited to conduct directed to the specific plaintiff in the forum state. *See BNSF Railway Co. v. Tyrrell*, 581 US ___ (2017) (Slip Opinion dated May 30, 2017). In so holding, the court stated:

> BNSF, we repeat, is not incorporated in Montana and does not maintain its principal place of business there. Nor is BNSF so heavily engaged in activity in Montana "as to render [it] essentially at home" in that state. *See Daimler*, 571 U.S. at ___ slip op., at 8) (internal quotation marks omitted). As earlier noted, BNSF has over 2,000 miles of railroad track and more than 2,000 employees in Montana. But, as we observed in *Daimler*, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Id.*, at ___, n. 20 (slip op., at 21, n. 20) (internal quotation marks and alterations omitted). Rather the inquiry "calls for an appraisal of a corporation's activities in their entirety"; "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Ibid.* In short, the business BNSF does in Montana is sufficient to subject the railroad to specific personal jurisdiction in that State on claims related to the business it does in Montana. But in-state business, we clarified in *Daimler* and *Goodyear*, does not suffice to permit the assertion of general jurisdiction over claims like Nelson's and Tyrrell's that are unrelated to any activity occurring in Montana.

*BNSF*, 581 U.S. ____ (2017) (slip op. at 11-12). The BNSF court also noted that 'the due process constraint described there [*Daimler*] applies to all state court assertions of general jurisdiction over non-resident defendants; that constraint does not vary with the type of claim asserted or business enterprise sued." *Id.*

7

In the present case, Plaintiffs allege that both Hard Rock Café entities have continuous and systematic business in Mississippi, marketing and selling memberships to Mississippi residents, including Plaintiffs, so as to establish minimum contacts with Mississippi. They further allege that Hard Rock Café Franchise Group is an alter ego of Hard Rock Café International in a corporate marketing venture and that Hard Rock Café International is "dominant over the other defendants' companies and exercises 'robust control' over their activities." Plaintiffs also allege that Hard Rock Café Franchise Group is a subsidiary of Hard Rock Café International. *See* First Amended Compl. ¶¶ 9-20.

However, there is no validity to Plaintiffs' unsupported and conclusory assertions and Plaintiffs have yet to provide any proof to support them. Although Hard Rock Café International and Hard Rock Café Franchise Group are both incorporated in the State of Florida and have their principal place of business in Orlando, Florida, both Hard Rock Café entities are separate and distinct. *See* Affidavits of Jay Wolszczak, Exhs. A and B to Motion to Dismiss. Neither Hard Rock Café entity is registered to do business in Mississippi nor is doing business in Mississippi. Neither Hard Rock Café entity has any direct relationship with the other defendants, Sibra Riviera and Palace Premier, both of which are Mexican corporations. Neither Hard Rock Café entity has entered into any type of franchise or license agreement with Sibra Riviera or Palace Premier pertaining to Riviera Maya resort property where Plaintiff's accident allegedly occurred. *See* Affidavits of Jay Wolszczak, Exhs. A and B to Motion to Dismiss. At no time has Hard Rock Café International or Hard Rock Café Franchise Group had any involvement with the day to day operations of the Riviera Maya property, nor has either Defendant been involved with the design, construction, maintenance or control of the Riviera Maya property, the ramp and/or walkway in question or any other area on the resort property where Plaintiff claims to have

fallen. Likewise, no Hard Rock Café entity named in this lawsuit has been involved with any solicitation or marketing of vacation and/or timeshare membership sales related to the Riviera Maya property in Mississippi or elsewhere.  *See* Affidavits of Jay Wolszczak, Exhs. A and B to Motion to Dismiss.  Plaintiffs acknowledged this fact when they apparently signed a Disclaimer at the sales meeting on October 1, 2016 at the Riviera Maya property which specifically stated that neither Hard Rock nor any of its affiliates had any involvement or ownership interest in the companies who were involved in the marketing and sale of memberships in the vacation club for that property.  *See* Disclaimer signed by Plaintiffs, Exh. C to Motion to Dismiss.  This Disclaimer which Plaintiffs acknowledged and agreed to, expressly states that no Hard Rock entity, which would include both Hard Rock Café defendants, had ownership interest in the Riviera Maya property where Plaintiff claims to have fallen.  Nor does any Hard Rock Café entity operate the premises in question.  Furthermore, Plaintiffs acknowledged that no suits could be brought against any Hard Rock affiliate, which would include the Hard Rock Café defendants, for claims against the Legendary Club pertaining to membership and/or marketing issues.  *See* Disclaimer, Exh. C to Motion to Dismiss.

As evidenced by the signed Disclaimer and attached Affidavits, neither Hard Rock Café International nor Hard Rock Café Franchise Group are involved in the vacation/timeshare membership sales business.  Upon information and belief, it appears Sibra Riviera and Palace Premier may utilize separate marketing and sale entities to sell vacation/timeshare memberships through and entity called "Legendary Club" which has no affiliation with either Hard Rock Defendant.  *See* Affidavits of Jay Wolszczak, Exhs. A and B, and signed Disclaimer, Exh. C to Motion to Dismiss.  Based on this information, it is clear that neither Defendant Hard Rock Café entity can be considered "at home" in Mississippi and therefore, this Court may not assert

9

general jurisdiction over either Hard Rock Café International or Hard Rock Café Franchise Group.  The Affidavits provided with the Motion, along with the signed Disclaimer show that neither Hard Rock Café entity had any involvement with the Riviera Maya property because neither were involved as a franchisor/licensor or had any involvement in the design, construction, maintenance or operations of the hotel in question, including the ramp or walkway where Plaintiff fell.  Plaintiffs have provided no evidence other than mere speculation and conclusory allegations with which to show that either Hard Rock Café entity could be found "at home" in Mississippi.  Under *Daimler* and its progeny, the only place that the Defendant Hard Rock entities can be found "at home" would be in the State of Florida.  Even then, Defendants contend that neither Hard Rock Café entity would be amenable to suit in Florida given the fact that neither has any connection with the Mexican property in question.

## IV. THIS COURT LACKS SPECIFIC JURISDICTION OVER THE DEFENDANT HARD ROCK CAFÉ ENTITIES

Because neither Defendant Hard Rock Café entity is subject to general jurisdiction in Mississippi, Plaintiffs must establish that this Court somehow may somehow exercise specific jurisdiction over them.  As the Supreme Court has explained "[t]he inquiry whether a forum state may assert specific jurisdiction over a non-resident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"  *Walden*, 134 S. Ct. at 1121 (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 775, 104 S. Ct. 1473, 79 L.Ed.2d 790 (1984)).  "For a state to exercise jurisdiction consistent with due process the defendant sued-related conduct must create a *substantial* connection with the forum state."  *Id*. (emphasis added) Consistent with the Supreme Court precedent, this Court further explained in *Pitts*:

> In contrast to general jurisdiction, "specific jurisdiction" is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.  For

10

>jurisdiction to comport with the limits of due process, the defendant's suit-related conduct must create a substantial connection with the forum state. Instead of asking whether the defendant is "at home" in the forum, this jurisdictional inquiry focuses on whether the defendant has sufficient minimum contacts with the forum and whether the plaintiff's cause of action arises out of or relates to these forum-related contacts…
>
>In the case of specific jurisdiction, due process requires (1) minimum contacts by the defendant purposely directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims and (3) that the exercise of jurisdiction be fair and reasonable.

*Id*. at 684 (internal citations omitted).

### A.    Both Defendant Hard Rock Café entities lack minimum contacts purposefully directed at Mississippi

The assertion of specific jurisdiction over both Defendant Hard Rock Café entities fail the first requirement necessary for the exercise of jurisdiction, i.e. both Hard Rock Café entities lack minimum contacts purposefully directed at the forum state. The "minimum contacts" analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with the persons who reside there." *Walden*, 134 S. Ct. at 1122 (citing *International Shoe*, 326 U.S. at 319). As evidenced by the attached Affidavits of Jay Wolszcazk, neither Hard Rock Café International nor Hard Rock Café Franchise Group had any involvement with the solicitation and/or marketing of vacation/timeshare membership sales in Mississippi which in any way pertain to the Mexican hotel property. *See* Affidavits of Jay Wolszczak, Exh. A and B to Motion to Dismiss. This fact is also confirmed by the Disclaimer signed by both Plaintiffs on October 1, 2016 in Mexico. As previously stated, both Hard Rock Café International and Hard Rock Café Franchise Group are incorporated in the State of Florida and both have their principal places of business there. *Id*. Neither Hard Rock entity is qualified to do business in Mississippi and neither maintains a registered agent for the service of process in this state.

Any solicitation or marketing of vacation/timeshare membership sales in Mississippi pertaining to the Mexican property were done by some other legal entity, not Hard Rock Café International or Hard Rock Café Franchise Group.  Likewise any sales agreement or vacation package/membership purchase that may have been done with Plaintiffs was executed between the Plaintiffs and some other entity that was in no way affiliated with either Hard Rock Café Defendant.  The Supreme Court has expressly held that "[t]he unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction."  *Helicopteros,* 466 at U.S. at 417.  Other "relationship must arise of contacts that the 'defendant himself' creates with the forum state." *Walden*, 134 S. Ct. at 1122.  (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105, S. Ct. 2174, 85 L.Ed.2d 428 (1985)).

Just like the defendant in *Walden*, there was "no part of" or "course of conduct occurring" in Mississippi by the Hard Rock Café entities. Neither entity solicited, marketed or sold Plaintiffs any type of vacation membership in the State of Mississippi, as neither Defendant is in that type of business.  If in fact, Plaintiffs purchased such a vacation/timeshare membership at the Mexican property, said membership was offered and sold by some other entity, not either of the Hard Rock Café entity.  Therefore, neither Hard Rock Café Defendant has any jurisdictionally relevant contacts for the Court to find the presence of any specific jurisdiction over these Defendants.

**B.     Alternatively, both Hard Rock Café Defendants should be dismissed under Rule 12(b)(6)**

As set forth in the Affidavits of Jay Wolszczak, it is clearly obvious that neither Hard Rock Café Defendant had anything to do with the purported sale of a vacation membership to the Plaintiffs in Mississippi nor did they have anything to do with the Riviera Maya property in

Mexico. Neither Hard Rock Café entity was the franchisor or licensor for that Mexican property and in no way participated in the planning, design, construction, maintenance or control of that property, including the ramp or walkway where Plaintiff claims to have fallen. Plaintiff has provided no proof other than speculative and conclusory allegations which have clearly been refuted by the Affidavits of Mr. Wolszczak. Furthermore, the Disclaimer signed by both Plaintiffs clearly acknowledged that no Hard Rock affiliated entity was in any way involved with any ownership interest or operation of the Mexican resort at issue. Finally, Plaintiffs specifically acknowledged and agreed that no Hard Rock affiliated entity could be sued in connection with sales and marketing of Legendary Club memberships. Plaintiff, as the Court is most probably aware, is a licensed and practicing attorney on the Mississippi Gulf Coast and should have been aware of the content and possible effects of his signing the Disclaimer that he signed. Therefore, Hard Rock Café International and Hard Rock Café Franchise Group respectfully request the Court to grant their Motion to Dismiss on the above stated grounds.

      This 26th day of June 2017.

      Respectfully submitted,

      HARD ROCK CAFÉ INTERNATIONAL (USA), INC. AND HARD ROCK CAFÉ FRANCHISE GROUP, LLC

      /s/Richard W. Sliman
      RICHARD W. SLIMAN (MSB #9305)

Richard W. Sliman
Miss. Bar No. 9305
BUTLER SNOW LLP
1300 25th Avenue, Suite 204
P. O. Drawer 4248
Gulfport, MS  39502
Telephone: 228/864-1170
Fax: 228/868-1531
Richard.sliman@butlersnow.com

Attorneys for Hard Rock Café International (USA), Inc.
and Hard Rock Café Franchise Group, LLC

## CERTIFICATE OF SERVICE

    I, Richard W. Sliman, of counsel for Hard Rock Café International (USA), Inc. and Hard Rock Café Franchise Group, LLC, do hereby certify that I have this date electronically filed the foregoing pleading with the Clerk of the Court and served a copy of the foregoing pleading electronically to ECF Participants and via U. S. Mail upon non-ECF participants at their address of record.

    This 26th day of June, 2017.

                                /s/Richard W. Sliman
                                Richard W. Sliman

36583143v1